**Clinton FREEMAN and Pamela Freeman, Appellants,**

v.

**GREENBRIAR HOMES, INC., Appellee.**

No. 05–85–00942–CV.

Court of Appeals of Texas, Dallas.

July 18, 1986.

Rehearing Denied Aug. 26, 1986.

James L. Schutza, Dallas, for appellants.

Michelle D. Monse, Dallas, for appellee.

Before DEVANY, HOWELL and SCALES, JJ.

HOWELL, Justice.

Clinton and Pamela Freeman (Buyers) appeal from an adverse judgment rendered in their deceptive trade action against Greenbriar Homes, Inc. (Seller). Buyers' sole point of error alleges that the trial court erred in granting Seller's motion for a directed verdict. We find no reversible error in the trial court's action and, consequently, affirm the judgment.

Upon appeal of a directed verdict, our task is to determine whether there is any probative evidence to raise fact issues on the material questions presented. We must examine the evidence in the light most favorable to the party against whom the verdict was directed. *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex.1978). Accordingly, we will set forth the facts as related by Buyers.

The suit arose from Buyer's efforts to purchase a new home. Seller's advertisements led them to the Preston Meadows Addition in Plano, Texas. They toured a model home and examined some floor plans. A salesman, Lee Booth, conveyed price information to Buyers, regarding the model in which they were most interested either by writing the price on a floor plan or by giving them a price sheet. The price quoted was $130,950. Several days later, Buyers telephoned Booth to discuss buying the house. Booth again stated the price as $130,950. Mr. Freeman testified that Booth told him, "the sooner we came in, the quicker we could fix the price and the financing and he told me the prices would change after the following weekend and the financing might change as well."

That afternoon, Buyers met with Booth at the subdivision and talked to him about their prospective purchase. Booth again stated that prices were due to rise the following week. He told them that they could "lock-in" the price and avoid the increase by signing a contract that day.

Buyers agreed to buy and Booth filled out the printed contract forms. Mr. Freeman conceded that Booth "made it very clear that [the contract would not be effective unless it was] approved within five working days by an officer of Greenbriar." Buyers signed the contracts and gave a check for earnest money to Booth.

About three weeks later, Booth informed Buyers that Seller would not sell the house on the terms contained in the document that Buyers had signed. Instead, Seller was requiring an additional $4,000, making the total purchase price $134,950. Buyers refused to accept the new terms; instead, they brought suit under the Deceptive Trade Practices Act. TEX.BUS. & COM. CODE, §§ 17.41 *et seq.*

Buyers pleaded numerous "laundry list" violations of the DTPA. However, the gist of their claim is that the Greenbriar personnel never at any time intended to sell the house to them for $130,950. They contend that the quotation was a "come on," calculated to fuel their desire to own the property, falsely made for the deliberate purpose of causing Buyers to become "hooked" on Seller's property—Seller all the time intending to demand more money after Buyers had been led to believe that they had actually bought at the originally quoted price.

■ Assuming that any such conduct on the part of a real estate developer is proscribed by the DTPA "laundry list," a question that we do not reach in this appeal, it would most probably fit under subdivisions (9) (intent not to sell as advertised), (12) (misrepresenting rights conferred by an agreement), (14) (misrepresenting salesman's authority), or (23) (intentional withholding of information likely to cause purchaser not to buy).[1]

■ As we read subdivision (12), it focuses on the documents involved in the transaction, in this case, the sales contract. We find no violation of subdivision (12) because Buyers concede that Booth cau-

tioned them that the contract would not be effective until approved by an officer of seller. Assuming that Booth then and there affirmatively knew that the contract would not be accepted unless and until Buyers were induced to accept a price increase, we still fail to find a representation that the contract *as written* conferred or involved any rights, remedies, or obligations that were not provided—hence, no violation of subdivision (12). There was no falsity or deception as to the *contents of the documents;* the falsity or deception could only have related to the question whether or not Seller would thereafter sign the document. Subdivision (12) does not apply. *See Computer Business Services v. West,* 627 S.W.2d 759, 761 (Tex.App.—Tyler 1982, writ ref'd, n.r.e.).

■ A violation of subdivision (14) would turn upon the question: Was Booth authorized to advise Buyers that they could obtain the lower price by signing immediately? In this directed verdict appeal, we must accept Buyers' testimony that the statement was made. However, Buyers presented no evidence from which the finder of fact could have found that Booth was authorized to make the statement. They did nothing to rule out the possibility that Booth was mistaken, that he believed that the company would still accept a contract at the lower price. The law presumes honesty and fair dealing; falsity and deceptiveness must be proved. Without evidence that Seller authorized Booth to quote a price that Seller had already decided that it would not accept, we find no violation of subdivision (14). *Cf. Crawford Chevrolet Inc. v. McLarty,* 519 S.W.2d 656, 665 (Tex. Civ.App.—Amarillo 1975, no writ).[2]

---

**1.** To hold that a misquotation of price under the circumstances shown by this record falls under subdivision (2) (causing misunderstanding as to approval), subdivision (5) (mispresenting benefits) or subdivision (7) (misrepresenting quality or standard of goods) would require a rather expansive reading of such provisions. More seriously, it would overlap and obliterate (9), (12), (14) and (23). We can see little or no purpose in the latter provisions if the former are to be read in such a wide ranging manner. (9), (12), (14), and (23) would be denuded of any independent effect. They would become

redundant of (2), (5), and (7). Each portion of a statute must be considered as having independent meaning. The particular provision must be preferred over the general. We hold that (2), (5), and (7) have no application to the case at hand.

**2.** We recognize that in an action for promissory fraud, if the defendant denies that the statement testified to by the plaintiff was made, the jury, upon finding that the defendant's testimony is false, may infer from the defendant's denial that the statement was falsely made with no inten-

This leaves for consideration subsections (9) and (23). Had Seller placed an advertisement in the newspaper quoting a price of $130,950 while simultaneously and affirmatively intending to boost the selling price through the machinations reflected in this record, a rather clear violation of subsection (9) would be involved. But for the matter to be mentioned in a moment, this would bring before us the rather close question of whether or not the method of price quotation employed by Seller in this case falls within the definition of advertising.[3] However, that question will be left to another day. Furthermore, if Seller had been possessed from the beginning of a mindset not to sell unless a price increase could eventually be garnered, the intentional withholding of such information concerning its frame of mind might very well constitute a violation of subsection (23).

 We bypass a definitive interpretation of (9) and (23) because both of those subsections require a showing of intentional misconduct on the part of the seller. *Robinson v. Preston Chrysler-Plymouth,* 633 S.W.2d 500 (Tex.1982); *Pennington v. Singleton,* 606 S.W.2d 682, 689 (Tex.1980). There is no evidence from which a finder of fact could have legitimately concluded by a preponderance of the evidence that Seller was intending from the outset to demand a price increase. While the tardy demand for more money might constitute a suspicion or a surmise, it does not, standing alone, constitute submissible evidence of the intent to deceive necessary to trigger subsections (9) or (23). The reason: The possibility that Seller simply changed its mind is equally as strong as the possibility that Seller intended from the beginning to deceive or mislead.

We acknowledge that intent can rarely be proved by direct evidence. Only in the most unusual circumstance can a plaintiff produce a witness to testify of a declaration by the defendant of intent to engage in unlawful conduct. In the usual case, intent must be shown by circumstantial evidence. Nevertheless, Buyers had the burden to produce some circumstance or some other indirect evidence to rebut the presumption of fair and honest dealing. They failed to do so. We therefore hold that they did not make out a case of intent sufficient to entitle them to go to the jury under subsections (9) and (23) or either of them.

Having decided that Buyers have not made out a case under the "laundry list," subsection 17.46(b) of the DTPA, we pass to section 17.50(a)(3) prohibiting "any unconscionable action or course of action." We hold as a matter of law that it is not unconscionable for a subdivider or developer of real estate, without more, to cause persons to sign form contracts to purchase at specific prices, to expressly advise the prospective purchasers that the seller has reserved a period to accept or reject the transaction, and to later advise the purchaser that the contract will not be accepted unless a greater sum is paid. A form sales contract, executed only by the Buyer is but an offer to purchase. In order to recover on grounds of unconscionable conduct, it was necessary for Buyers to produce evidence of something beyond the mere fact that Seller refused to accept the offer as tendered. The record fails to include evidence of unconscionable conduct.

The judgment below is affirmed.

---

tion to perform. *Stanfield v. O'Boyle,* 462 S.W.2d 270, 272 (Tex.1971); *Finch v. McVea,* 543 S.W.2d 449, 452 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.).

The proposition cannot be applied in this case because Salesman Booth did not testify; no issue of false testimony is presented.

3. Advertising as distinguished from other forms of communication means to call a matter " 'to the public attention.' " *Smith v. Baldwin,* 611 S.W.2d 611, 614 (Tex.1981) quoting Black's Legal Dictionary (5th ed.1979). A communication made to Buyers individually would not fall within this definition.