842 So.2d 1076 (2003)
Laurence E. FENDRICH, Appellant,
v.
RBF, L.L.C., a Delaware limited liability company, Appellee.
No. 4D02-2203.
District Court of Appeal of Florida, Fourth District.
April 30, 2003.
*1077 Stanford R. Solomon and Hallie S. Evans of The Solomon Tropp Law Group, P.A., Tampa, for appellant.
Scott B. Newman of Holland & Knight LLP, West Palm Beach and Daniel S. Pearson and Ilene S. Pabian of Holland & Knight LLP, Miami, for appellee.
KLEIN, J.
We withdraw our opinion filed on March 19, 2003 and substitute the following opinion.
Defendant appellee, a developer, signed a reservation form purporting to give the *1078 appellant plaintiff the right to subsequently enter into a contract to purchase a home on a specified lot at a firm price. Plaintiff alleges that when defendant tendered the purchase contract, it was for a less desirable lot and at a higher price. We conclude that these allegations state a cause of action under the Florida Deceptive and Unfair Trade Practices Act.
The reservation form, entitled "Residence Homes at Eagle Tree Reservation Agreement," specifically referring to Lot 10A, contained the following relevant provisions:
1. Reservation of Residence Homes(s). Purchaser hereby reserves the right to purchase the aforedescribed Residence Home(s) in the Residence Home at Eagle Tree community of the Ritz-Carlton Golf Club & Spa, Jupiter project, in accordance with the terms and conditions set forth in this Agreement.
2. Purchase Price. The purchase price of the Residence Homes(s) hereby reserved by Purchaser shall be U.S. $1,200,000 (the "Purchase Price"). Seller assures Purchaser that the Purchase Price shall be that which is to be set forth in the Contract.
3. Refundable Deposit. Contemporaneously with Purchaser's execution of this Agreement, Purchaser agrees to deliver to Seller a check or payment by major credit card reasonably acceptable to Seller in the amount of U.S. $25,000 as a good faith deposit (hereinafter referred to as "Deposit") to be held by Seller in consideration for Seller's reservation of the aforedescribed Residence Home(s) in Purchaser's name. In the event that Purchaser actually consummates the purchase of such Residence Home(s) and proceeds with closing the transaction ("Closing"), the aforedescribed Deposit shall be applied toward the down payment required under any applicable purchase contract (the "Contract") to be executed. In the event that the Purchaser elects for any reason not to purchase the aforedescribed Residence Home(s) prior to the time that a legally binding Contract is executed by Purchaser, then, pursuant to Section 4 below, the Deposit together with any interest that has accrued, shall promptly be refunded to Purchaser.
4. No obligation. Purchaser acknowledges that until both Purchaser and Seller have executed a Contract with respect to the aforedescribed Residence Home(s), Purchaser is under no obligation to purchase and Seller is under no obligation to sell such Residence Home(s). This agreement can be terminated by either party at any time, subject to a refund of Purchaser's Deposit in accordance with Section 5 below.
When the time came to execute the purchase agreement, about five months later, the defendant offered a contract for Lot 2C, not 10A, for a purchase price of $1,495,000, not $1,200,000. Plaintiff subsequently filed this lawsuit seeking specific performance, damages for breach of contract, and damages for violating the Florida Deceptive and Unfair Trade Practices Act (FDUTPA).
Plaintiff's theories of recovery of damages for breach of contract or specific performance are grounded on the argument that this was an enforceable option agreement. An option to purchase land, however, is irrevocable by the seller until expiration of a time limit. Goodman v. Goodman, 290 So.2d 552 (Fla. 1st DCA 1973). Because paragraph 4 allows either party to terminate at any time, this is not a valid option agreement, and the trial court was correct in dismissing the claims for specific performance and damages. It does not follow, however, that there cannot *1079 be a cause of action for deceptive trade practices under FDUTPA.
Section 501.204, Florida Statutes (2002) provides:
(1) Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.
Trade or commerce is defined in section 501.203(8):
"Trade or commerce" means the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.
Florida courts, in construing Chapter 501, are guided by federal decisions interpreting the Federal Trade Commission Act. § 501.204(2). A deceptive practice, under federal decisions, is one which is "likely to mislead consumers." Davis v. Powertel, Inc., 776 So.2d 971 (Fla. 1st DCA 2000) and cases cited.
The reservation form states that "Purchaser hereby reserves the right to purchase the aforedescribed Residence Home(s), in the Residence Home at Eagle Tree Community of the Ritz-Carlton Golf Club & Spa ..." for a specific price ($1,200,000) and Seller "assures Purchaser that the Purchase Price shall be that which is to be set forth in the Contract." It further provides that the Purchaser delivers a check in the amount of "$25,000.00 as a good faith deposit ... to be held by Seller in consideration for Seller's reservation of the aforedescribed Residence Homes(s) in Purchaser's name."
Despite paragraph 4, which says that the reservation form is not a purchase contract, the reservation form could have deceived this consumer into thinking that he was reserving the right to enter into a contract for a home on Lot 10A for $1,200,000. If he knew this reservation form was not worth the paper it was written on, which is the position of the defendant, why would he have written a check for $25,000? If, as the complaint alleges, defendant later offered a contract for a home on an inferior lot at a higher price, it could be found to have engaged in a classic bait and switch.[1]
Whether a reservation for the purchase of real estate can constitute a deceptive trade practice is a question of first impression in Florida.[2] Defendant relies on two cases from other jurisdictions to support its argument that this transaction cannot be deceptive; however, those cases are distinguishable.
In Leekha v. Wentcher, 224 Ill.App.3d 342, 166 Ill.Dec. 599, 586 N.E.2d 557 *1080 (1991), the prospective purchaser signed a property reservation receipt acknowledging a ten percent deposit and reserving the right to purchase a specified lot. In Leekha, however, the seller did not attempt to change either the property or the price. Rather the purchasers refused to sign the proffered contract because of an easement for a bike path.
In Freeman v. Greenbriar Homes, Inc., 715 S.W.2d 394 (Tex.App.1986), the buyers signed a contract to purchase a home and gave a deposit check to a salesman. The contract was not signed by the developer seller, however, and three weeks later the buyers were informed that the developer would only sign for an additional $4,000. Freeman is distinguishable because the seller had never bound itself to do anything.
We are well aware that reservation forms are widely used in this state to market real estate and that they can serve a useful purpose. When the reservation form, however, unequivocally represents that the consumer will be given the opportunity to purchase a particular lot or unit at a firm price, it can be likely to mislead. We accordingly reverse the order dismissing the complaint for failure to state a cause of action only in regard to Count III, the deceptive trade practice claim.
POLEN, C.J., and HAZOURI, JJ., concur.
NOTES
[1] "`Bait and switch' describes an offer which is made not in order to sell the advertised product at the advertised price, but rather to draw the customer to the store to sell him another similar product which is more profitable to the advertiser." Tashof v. Fed. Trade Comm'n, 437 F.2d 707, 709 n. 3 (D.C.Cir. 1970); Izadi v. Machado Ford, Inc., 550 So.2d 1135, 1139 n. 8 (Fla. 3d DCA 1989).
[2] An early version of Chapter 501 did not apply to sales of real estate, State ex rel. Herring v. Murdock, 345 So.2d 759 (Fla. 4th DCA 1977); however, the broad definition of trade or commerce contained in the present statute, which refers to "any property" was added in 1993. Ch. 93-38, Laws of Fla. Defendant does not contend that real estate is exempt. See also Southwest Sunsites, Inc. v. Fed. Trade Comm'n, 479 U.S. 828, 107 S.Ct. 109, 93 L.Ed.2d 58 (1986)(Federal Deceptive Practices Act applies to sale of undeveloped land to out of state purchasers).