**Philip A. ZLOTNICK, Plaintiff,**

v.

**PREMIER SALES GROUP, INC., Boynton Waterways Investment Associates, LLC, and Panther Real Estate Partners, Inc., Defendant.**

No. 06–80091–CIV.

United States District Court,
S.D. Florida,
West Palm Beach.

May 10, 2006.

---

**10.** The Court declines to exercise jurisdiction over Plaintiff's related, state law claims.

**1292**

Eric Allan Lee, Boca Raton, FL, Jeffrey Miles Ostrow, Taylor Hodkin Kopelowitz Ostrow, Douglas Alan Blankman, Fort Lauderdale, FL, for Plaintiff.

Paul Joseph Schwiep, Burlington Weil Schwiep Kaplan & Blonsky, Miami, FL, Paul R. Lipton, Susan Fleischner Kornspan, Greenberg Traurig, West Palm Beach, FL, for Defendant.

### OMNIBUS ORDER ON DEFENDANTS' MOTIONS TO DISMISS

RYSKAMP, District Judge.

THIS CAUSE comes upon the Court two motions to dismiss. First, on February 28, 2006, Defendants, Boynton Waterways Investment Associates, LLC and Panther Real Estate Partners, Inc., filed a Motion to Dismiss the Complaint [**DE 11**]. Plaintiff filed a Memorandum of Law in Opposition to Defendants' Motion to Dismiss [**DE 15**] on March 16, 2006. Defendants then filed a Reply to Plaintiff's Response in Opposition to Defendants' Motion to Dismiss [**DE 24**] on March 24, 2006.

Next, Defendant, Premier Sales Group, Inc. ("Premier") filed a Motion to Dismiss Complaint and Memorandum in Support [**DE 28**] on March, 31, 2006. Plaintiff filed a Memorandum of Law in Opposition to Defendant Premier Sales Group, Inc.'s Motion to Dismiss [**DE 34**] on April 14, 2006. Premier filed a Reply in Support of Its Motion to Dismiss Complaint [**DE 36**] on April 19, 2006. The Court heard oral arguments on the motions on April 20, 2006. Both motions are now ripe for adjudication.

### I. Introduction

This is an action brought under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.201 *et seq. See* Compl. [**DE 1**], at ¶ 31 *et seq.* Plaintiff alleges that Defendants are business entities engaged in the development, marketing, construction and/or sale of residential condominiums, and that they offered to sell condominiums in a Boynton Beach development called Promenade Condominiums. *Id.* at ¶¶ 4–7. Plaintiff further alleges that instead of using purchase agreements, Defendants "employed a scheme whereby they solicited deceptive Reservation Agreements for specific residences..." *Id.* at ¶ 8. Plaintiff entered into one such Reservation Agreement with Defendant, Boynton Waterways Investment Associates, LLC ("Boynton Waterways") on February 23, 2005, whereby he reserved the right to purchase Unit 207N for $310,000.00. *Id.* at ¶¶ 9–10. As part of the Agreement, Plaintiff paid a $15,000.00 deposit to Boynton Waterways. *Id.* at ¶ 11.

The Reservation Agreement provides that Plaintiff's reservation deposit "expresses [his] interest in purchasing Unit No. 207N... in the proposed condominium..." Reservation Agreement (attached as Exh. "2" to Compl. [**DE 1**]). Furthermore, the Agreement states that "Purchaser recognizes that this Reservation Agreement is a reservation solely with respect to a proposed condominium; and accordingly, this Reservation Agreement is not an agreement to sell the Unit, nor does it confer any lien upon or interest in the Unit or on the proposed Condominium property." *Id.* The Agreement also states that before a formal purchase contract is executed by the parties, "Seller may cancel this Agreement for any reason whatsoever, by giving written notice thereof to Purchaser and Escrow Agent, in which even the Reservation Deposit, together with any interest thereon, shall be returned to Purchaser, and thereafter Purchaser shall have no claim of any kind against Seller." *Id.*

In December, 2005, Plaintiff received a letter from Boynton Waterways

indicating that there were delays in developing the community and due to increased prices, Boynton Waterways was forced to cancel all Reservation Agreements and return all deposits. *See* Compl. [**DE 1**], at ¶ 15. Specifically, Boynton Waterways stated that it had suffered "meteoric increases in construction costs [ ] in tandem with worsening labor and material shortages resulting from Hurricanes Katrina, Rita and Wilma..." Dec. 22, 2005 Ltr. (attached as Exh. "4" to Compl. [**DE 1**]). Two weeks later, however, Plaintiff received another letter from Boynton Waterways, wherein he was offered to purchase the same unit that he had previously reserved, but at an increased price of $370,000.00. Compl. [**DE 1**], at ¶¶ 17–19. Plaintiff contends that Boynton Waterways initially entered into the Reservation Agreements in order to secure its financing, but that it unilaterally canceled them "so that it could reap the benefits of an increase in prices" in light of an active real estate market. *Id.* at ¶¶ 38–39. Plaintiff alleges that Defendant's actions "constitute a classic 'bait and switch' transaction" that violate the provisions of FDUTPA.[1] *Id.* at ¶ 44.

Defendants, Boynton Waterways and Panther Real Estate Partners, Inc. ("Panther") now move this Court to dismiss the only count in Plaintiff's Complaint [**DE 1**], on the grounds that: (1) the Reservation Agreement was a non-binding "agreement to agree" that did not give Plaintiff the exclusive right to purchase the unit; (2) Plaintiff did not suffer actual damages; (3) Plaintiff could have avoided the alleged injury incurred, because he had the right to cancel the Reservation Agreement at any time. Additionally, Defendant Premi-

er moves this Court to dismiss the Complaint [**DE 1**] for the following reasons: (1) Premier was not a party to the Reservation Agreement, and the Complaint fails to allege that Premier had any involvement in the negotiation and/or execution thereof; (2) Plaintiff has failed to state a claim under FDUTPA because the Reservation Agreement explicitly allows both parties to cancel without further obligation or penalty, prior to the execution of a purchase agreement; and (3) FDUTPA is not applicable to this case, as the Act only applies to acts taken in "trade or commerce," and does not cover real estate transactions.

## II. Discussion

### A. Standard on Motions to Dismiss

 A court should only grant a motion to dismiss for failure to state a claim "when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir.1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also* Fed.R.Civ.P. 12(b)(6). A motion to dismiss merely tests the sufficiency of the complaint; it does not decide the merits of the case. *See Wein v. American Huts, Inc.*, 313 F.Supp.2d 1356, 1359 (S.D.Fla.2004). In general, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The rules "do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair

---

1. " 'Bait and switch' describes an offer which is made not in order to sell the advertised product at the advertised price, but rather to draw the customer to the store to sell him another similar product which is more profit-

able to the advertiser." *Fendrich v. RBF, L.L.C.*, 842 So.2d 1076, 1079 n. 1 (Fla. 4th DCA 2003) (quoting *Tashof v. Fed. Trade Comm'n*, 437 F.2d 707, 709 n. 3 (D.C.Cir. 1970)).

notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47, 78 S.Ct. 99.

When considering a motion to dismiss, the court must accept the well-pled facts in the complaint as true and construe them in the light most favorable to the plaintiff. *Beck v. Deloitte & Touche et al.,* 144 F.3d 732, 735 (11th Cir.1998). As the Eleventh Circuit has noted, "the threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low." *In re Southeast Banking Corp.,* 69 F.3d 1539, 1551 (11th Cir.1995) (quotations omitted). Nonetheless, to withstand a motion to dismiss, it is axiomatic that the complaint must allege facts sufficiently setting forth the essential elements of a cause of action. *See Wein,* 313 F.Supp.2d at 1359.

### B. Applicability of FDUTPA to Real Estate Transactions

As an initial matter, Premier argues that FDUTPA is not applicable to real estate transactions. The Act provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices *in the conduct of any trade or commerce* are hereby declared unlawful." Fla. Stat. § 501.204(1) (emphasis added). "Trade or commerce" is defined as "advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Premier contends that real estate transactions are not covered under FDUTPA because the legislature did not explicitly include real estate within the definition for "trade or commerce", and because several Florida courts have found FDUTPA inapplicable to real estate transactions. *See Kingswharf, Ltd. v. Kranz,* 545 So.2d

276, 277 (Fla. 3d DCA 1989); *Larry Kent Homes, Inc. v. Empire of Am. FSA,* 474 So.2d 868, 870 n. 1 (Fla. 3d DCA 1985); *State v. De Anza Corp.*

The cases cited by Premier are all inapposite as they were decided under an early version of Chapter 501. However, the broad definition of "trade or commerce" contained in the present statute, which refers to "any property" was added in 1993. Since then, Florida courts (at both the state and federal level) have interpreted FDUTPA to encompass real estate transactions. *See Acosta v. Campbell,* No. 6:04CV761ORL28DAB, 2006 WL 146208, at *17 (M.D.Fla. Jan. 18, 2006); *Williams v. Edelman,* 408 F.Supp.2d 1261, 1272–74 (S.D.Fla.2005); *Beacon Prop. Mgmt., Inc. v. Pnr, Inc.,* 890 So.2d 274, 277–78 (Fla. 4th DCA 2004); *Fendrich,* 842 So.2d at 1079–80 n. 2. Additionally, one court has explicitly held that "as the statute is currently worded, the purchase of a condominium constitutes a 'consumer transaction.' " *Williams,* 408 F.Supp.2d at 1273. Another court has found that a reservation for the purchase of real estate can constitute a deceptive trade practice under the Act. *See Fendrich,* 842 So.2d at 1080. Thus, this Court is satisfied that the Act is applicable to the facts of this case.

### C. FDUTPA Claim Against Non–Party Premier

Next, this Court agrees that Plaintiff has failed to state a cause of action against Premier, which is not a party to the Reservation Agreement. Plaintiff alleges only that Premier was involved in the marketing and selling of the units at Promenade Condominiums. *See* Compl. [DE 1], at ¶¶ 4, 7. Plaintiff does not allege any specific involvement by Premier in the inducement, negotiation, creation or cancellation of the Reservation Agreement. Additionally, Plaintiff has failed to allege

any independent acts of deception or fraud that are unrelated to the procurement of the Reservation Agreement by Premier, that would otherwise support a claim under FDUTPA. Although Plaintiff needs to plead its claim against Premier with the level of particularity required under Fed. R.Civ.P. 9(b) for averments of fraud[2], Plaintiff has failed to satisfy the minimal standard of Rule 8. The allegations of the Complaint **[DE 1]** simply do not give Premier fair notice of the grounds upon which Plaintiff's FDUTPA claim rests. *See Conley*, 355 U.S. at 47, 78 S.Ct. 99. Accordingly, the Court finds that dismissal of this action against Premier is appropriate.

### D. Compliance with Terms of Reservation Agreement

■ Finally, this Court concludes that Plaintiff has failed to state a cause of action under FDUTPA because it is undisputed that Boynton Waterways complied with the terms of the Reservation Agreement. The Reservation Agreement provides that before a formal purchase contract is executed by the parties, Boynton Waterways has the right to cancel the Agreement "for any reason whatsoever, by giving written notice thereof to Purchaser and Escrow Agent, in which even the Reservation Deposit, together with any interest thereon, shall be returned to Purchaser, and thereafter Purchaser shall have no claim of any kind against Seller." Reservation Agreement (attached as Exh. "2" to Compl. **[DE 1]** ). There is no dispute that Boynton Waterways properly canceled the Reservation Agreement pursuant to its terms, and that it did not breach the Agreement in any other regard.

■ Rather, Plaintiff's claim appears to be based on the use of the Reservation Agreement itself as a deceptive and unfair practice. In other words, Plaintiff seems to allege that he was deceived into executing a misleading Reservation Agreement. Plaintiff's claim is analogous to a fraudulent inducement claim. At least one Florida court has recognized that a plaintiff has no FDUTPA claim where he signed a contract whose terms expressly contradict any misrepresentations on which he relied. *Rosa v. Amoco Oil Co.*, 262 F.Supp.2d 1364, 1368 (S.D.Fla.2003). Similarly, this Court concludes that Plaintiff has failed to state a claim under FDUTPA because the express terms of the contract allowed Boynton Waters to cancel the Reservation Agreement without penalty.

Moreover, this case is distinguishable from the *Fendrich* case, on which Plaintiff relies. In *Fendrich*, the court found that although the terms of a reservation agreement gave the seller the right to cancel at any time, the reservation agreement could still constitute a deceptive trade practice because it "unequivocally represent[ed] that the consumer [would] be given the opportunity to purchase a particular lot or unit at a firm price..." *Fendrich*, 842 So.2d at 1080. In this case, however, the Reservation Agreement clearly provides that it is not an agreement to sell a particular unit at a fixed price, and that the purchaser has only expressed an interest in purchasing a proposed unit.[3] *See* Reservation Agreement (attached as Exh. "2" to Compl. **[DE 1]** ). Therefore, the Reservation Agreement is not likely to mislead a consumer, and the Court does not consider it to constitute a deceptive and unfair trade practice under FDUTPA. The Court need not reach the issues of whether Plaintiff has suffered actual damages and

---

**2.** *See State of Fla., Office of Atty. Gen., Dept. of Legal Affairs v. Tenet Healthcare Corp.*, 420 F.Supp.2d 1288, 1310–11 (S.D.Fla.2005).

**3.** Thus, the case is more akin to the *Freeman* case cited by the *Fendrich* court, where the seller did not bind itself to enter into a purchase contract.

whether Plaintiff could have reasonably avoided the injury alleged.

### III. Conclusion

The Court has carefully reviewed the motions and considered the oral arguments of the parties, and based on the foregoing reasons, it is hereby,

ORDERED AND ADJUDGED that:

(1) Defendants Boynton Waterways Investment Associates, LLC and Panther Real Estate Partners, Inc.'s Motion to Dismiss the Complaint [**DE 11**] is GRANTED;

(2) Defendant Premier Sales Group, Inc.'s Motion to Dismiss Complaint [**DE 28**] is GRANTED;

(3) Plaintiff's Complaint [**DE 1**] is DISMISSED with PREJUDICE; and

(4) The Clerk of the Court shall CLOSE this case and DENY all pending motions, including but not limited to Plaintiff's Motion for Class Certification [**DE 16**], as MOOT.