[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 19, 2007
THOMAS K. KAHN
CLERK

No. 06-13305
Non-Argument Calendar

_____

D. C. Docket No. 06-80091-CV-KLR

PHILIP A. ZLOTNICK,

Plaintiff-Appellant,

versus

PREMIER SALES GROUP, INC.,
BOYNTON WATERWAYS INVESTMENT ASSOCIATES, LLC,
PANTHER REAL ESTATE PARTNERS, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 19, 2007)

Before DUBINA, CARNES and HULL, Circuit Judges.

HULL, Circuit Judge:

Plaintiff Philip A. Zlotnick appeals the district court's order dismissing his suit against Premier Sales Group, Inc. ("Premier"), Boynton Waterways Investment Associates, LLC ("Boynton Waterways"), and Panther Real Estate Partners, Inc. ("Panther"), filed pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. Ann. §§ 501.201-.213. After review, we affirm the dismissal of Zlotnick's complaint for failure to state a claim.

## I. BACKGROUND

On February 23, 2005, Zlotnick, a citizen of Maryland, signed a reservation agreement with Boynton Waterways, a citizen of Florida, for a unit in a condominium complex to be built in Boynton Beach, Florida. The reservation agreement provided that payment of a $15,000 reservation deposit "expresses Purchaser's interest in purchasing Unit No. 207N (the 'Unit') in the proposed condominium . . . at a purchase price of $310,000." The reservation agreement then stated that Boynton Waterways "assures that the foregoing purchase price will be the purchase price in the contract for the sale and purchase of the Unit (the "Contract") submitted to Purchaser."

The reservation agreement also gave both Zlotnick and Boynton Waterways the option of canceling the agreement at any time prior to entering a purchasing contract, as follows:

2

Purchaser may cancel this Reservation Agreement by notifying Seller or the Escrow Agent in a signed writing at any time before Purchaser signs the [purchase contract] . . . .  Before both Purchaser and Seller sign and deliver the [purchase contract], Seller may cancel this Agreement for any reason whatsoever, by giving written notice thereof to Purchaser and Escrow Agent, in which event the Reservation Deposit, together with any interest thereon, shall be returned to Purchaser, and thereafter Purchaser shall have no claim of any kind against Seller.

Moreover, the agreement states, "Purchaser recognizes that this Reservation Agreement is a reservation solely with respect to a proposed condominium; and, accordingly, this Reservation Agreement is not an agreement to sell the Unit, nor does it confer any lien upon or interest in the Unit or on the proposed Condominium property."

Zlotnick paid the reservation deposit, which was held in escrow in accordance with the reservation agreement's terms.  On May 2, 2005, the contracts administrator for the condominium complex supplied Zlotnick with a copy of the reservation agreement and indicated that the purchase contracts would be completed by early June 2005.

On December 22, 2005, Boynton Waterways sent Zlotnick a letter stating that because of "meteoric increases in construction costs . . . . in tandem with worsening labor and material shortages resulting from Hurricanes Katrina, Rita and Wilma," Boynton Waterways could not build the condominium development

3

at the original reservation prices. As a result, Boynton Waterways canceled all reservation agreements, including Zlotnick's, and returned all deposits. The letter stated, "effective as of the date hereof, your Agreement is hereby terminated and is deemed null and void."

On January 6, 2006, Boynton Waterways sent Zlotnick another letter announcing the reopening of the condominium sales center. The letter indicated that Zlotnick had an exclusive ten-day window to purchase the same unit he had previously reserved at the price of $370,000, a $60,000 price increase over the amount set in the 2005 reservation agreement. Zlotnick alleges that Boynton Waterways sent similar letters to all previous reservation holders for the 318 units at the condominium complex.

On January 27, 2006, Zlotnick filed a class action complaint in federal district court under the FDUTPA on behalf of the previous reservation holders at the condominium complex. The complaint alleged that Boynton Waterways; Panther, a Florida-based real estate development company affiliated with Boynton Waterways; and Premier, a Florida-based company that marketed the condominium complex, solicited deceptive reservation agreements to secure financing and then terminated the reservation agreements with the sole purpose of reaping the benefits of a rising real estate market.

4

Boynton Waterways, Panther, and Premier timely filed motions to dismiss for failure to state a claim. A copy of the reservation agreement was attached to the complaint, and the parties at this point do not dispute the facts in the case. After hearing oral arguments on the motions, the district court granted the motions to dismiss on May 10, 2006. See Zlotnick v. Premier Sales Group, Inc., 431 F. Supp. 2d 1290, 1296 (S.D. Fla. 2006).

Zlotnick timely appealed.

## II. DISCUSSION

The FDUTPA declares that "unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. Fla. Stat. Ann. § 501.204(1). Pursuant to § 501.211, any person who has suffered losses as a result of a violation may commence a private action to recover actual damages, attorney's fees, and costs. Fla. Stat. Ann. § 501.211(2). The Florida Supreme Court has noted that "deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." PNR, Inc. v. Beacon Prop. Mgmt., Inc., 842 So. 2d 773, 777 (Fla. 2003) (quotation marks and citation omitted). This standard requires a showing of "probable, not possible, deception" that is "likely to cause injury to a reasonable relying consumer." Millennium Commc'ns & Fulfillment, Inc. v.

5

Office of the Att'y Gen., 761 So. 2d 1256, 1263 (Fla. Dist. Ct. App. 2000).

Zlotnick claims that the defendants schemed to circumvent the statutory requirements in Fla. Stat. Ann. § 718.502(2)(c) governing condominium reservation agreements by canceling the reservation agreements and then offering the same units at a higher price. See Fla. Stat. Ann. § 718.502(2)(c) (listing terms that must be included in reservation agreements). We conclude that these allegations do not state a claim under the FDUTPA and affirm the district court's grant of the motions to dismiss.[1]

It is clear that Zlotnick's reservation agreement meets all statutory requirements under Florida law. The only statutory provision at issue is the requirement that a reservation agreement must include a statement "that the purchase price represented in . . . the reservation agreement will be the price in the contract for purchase and sale or that the price represented may be exceeded within a stated amount . . . or that no assurance is given as to the price in the contract for purchase or sale." Fla. Stat. Ann. § 718.502(2)(c)(4).[2] Here, the

_____

[1]We review de novo a district court's dismissal pursuant to Fed. R. Civ. P. 12(b)(6), accepting as true all facts set forth in the plaintiff's complaint. Thaeter v. Palm Beach County Sheriff's Office, 449 F.3d 1342, 1352 (11th Cir. 2006).

[2]There is no dispute that the reservation agreement here satisfied the other requirements of § 718.502(2)(c), which states that such agreements must also include: (1) a statement that the developer must file condominium documents with the Division of Florida Land Sales, Condominiums and Mobile Homes prior to entering a binding purchasing agreement; (2) a statement of the right of the prospective purchaser to receive all required condominium

6

reservation agreement states, "[s]eller assures that the foregoing purchase price will be the purchase price in the contract for the sale and purchase of the Unit . . . ." This statement almost mirrors the language of Fla. Stat. Ann. § 718.502(2)(c)(4). In his reply brief, Zlotnick concedes that the reservation agreements are valid.

However, Zlotnick argues that although the reservation agreements may have been facially valid, the defendants' scheme flouted the intent of Fla. Stat. Ann. § 718.502(2)(c)(4) by canceling the reservation agreements in order to increase prices above the price established in those initial agreements. He contends that the circumstances surrounding the reservation agreement would have misled a reasonable purchaser into believing that the purchase price listed in the reservation agreement would not be changed.

The express terms of the reservation agreement undermine Zlotnick's claim, however. First, the language of the reservation agreement is clear on its face that it only expressed Zlotnick's "interest" in purchasing a specific unit and did not constitute a guaranteed purchase contract. The reservation agreement stated that it "is not an agreement to sell the Unit, nor does it confer any lien upon

---

documents; (3) the name and address of the escrow agent; and (4) a statement that the deposit must be payable to the escrow agent, who must provide a receipt to the prospective purchaser. Fla. Stat. Ann. § 718.502(2)(c).

7

or interest in the Unit or on the proposed Condominium property." Furthermore, Florida courts treat reservation agreements as mere "agreements to agree," not as binding purchase contracts. See Portell Int'l Realty, Inc. v. Jacobson, 802 So. 2d 431, 433 (Fla. Dist. Ct. App. 2001).

Additionally, the reservation agreement gave Boynton Waterways an opportunity to "cancel this agreement for any reason whatsoever" at any point prior to entering a purchase contract.[3] While the agreement provided that "[s]eller assures that the foregoing purchase price will be the purchase price in the contract for the sale and purchase of the Unit," there are no assurances that the purchase price would remain the same if Boynton Waterways canceled the reservation agreement. In light of the broad cancellation provision and express terms indicating that the agreement conferred no interest in the proposed condominium unit, no reasonable purchaser would believe that the reservation agreement set a binding purchasing price unless the agreement was still in effect when a purchase contract was delivered.

Zlotnick argues that despite the plain language in his reservation

---

[3]Zlotnick disputes whether Boynton Waterways had any unilateral authority to cancel the reservation agreement. Zlotnick misreads the plain language of the reservation agreement, which expressly grants the seller the option to cancel "[b]efore both Purchaser and Seller sign and deliver the Contract." Moreover, Florida law recognizes the right of both prospective purchasers and developers to cancel reservation agreements. See Fla. Stat. Ann. § 718.502(2)(a) (requiring that reservation agreements notify prospective purchasers of their right to a refund of the reservation deposit "upon written request to the escrow agent by the prospective purchaser or the developer" (emphasis added)).

agreement, Boynton Waterways engaged in a deceptive trade practice under

Fendrich v. RBF, L.L.C., 842 So. 2d 1076 (Fla. Dist. Ct. App. 2003).  In

Fendrich, a prospective purchaser entered a reservation agreement to purchase a

specific lot, designated as Lot 10A, at a firm purchase price.  See Fendrich, 842

So. 2d at 1078.  The Fendrich reservation agreement also contained a termination

option, which provided that "Purchaser acknowledges that until both Purchaser

and Seller have executed a Contract . . ., Purchaser is under no obligation to

purchase and Seller is under no obligation to sell such Residence Home(s).  This

agreement can be terminated by either party at any time, subject to a refund of

Purchaser's Deposit . . . ."  Id.

In Fendrich, the seller did not cancel the reservation agreement.  Instead,

while the reservation agreement in Fendrich was still in effect, the seller allegedly

tendered a purchase contract for a less desirable home, designated as Lot 2C, at a

higher price.  Id.  The Florida state appeals court concluded that although the

reservation agreement stated that it was not a purchase contract, "[w]hen the

reservation form . . . unequivocally represents that the consumer will be given the

opportunity to purchase a particular lot or unit at a firm price, it can be likely to

mislead."  Id. at 1080.

The circumstances here differ materially from the scheme in Fendrich,

9

however.  First, Zlotnick's reservation agreement included additional language emphasizing that it did not establish a binding purchase agreement.  Zlotnick's reservation agreement provided that the deposit only "expresses Purchaser's interest in purchasing Unit No. 207N (the 'Unit')," and, significantly, further stated, "this Reservation Agreement is not an agreement to sell the Unit, nor does it confer any lien upon or interest in the Unit or on the proposed Condominium property."  The reservation agreement in <u>Fendrich</u> contained no terms similar to this further statement in Zlotnick's agreement.

Second, even though the reservation agreement in <u>Fendrich</u> also allowed either the developer or the purchaser to terminate the agreement, Zlotnick's reservation agreement contained the additional clarification that if Boynton Waterways canceled the agreement, "thereafter Purchaser shall have no claim of any kind against Seller."  Accordingly, Zlotnick's reservation agreement more clearly expressed that it did not establish a binding purchase price and carried no more legal significance than an "agreement to agree," thus diminishing the likelihood to mislead.[4]

[4]The district court distinguished <u>Fendrich</u> by noting that Zlotnick's "Reservation Agreement clearly provides that it is not an agreement to sell a particular unit at a fixed price, and that the purchaser has only expressed an interest in purchasing a proposed unit."  <u>Zlotnick</u>, 431 F. Supp. 2d at 1295.  The reservation agreement in <u>Fendrich</u> contains a fixed price assurance somewhat similar to the fixed price statement in Zlotnick's reservation agreement, which provides, "Seller assures that the foregoing purchase price will be the purchase price in the contract for the sale and purchase of the Unit . . . submitted to Purchaser."  However, Zlotnick's reservation agreement has the additional provision, missing in the reservation agreement in

Most importantly, the reservation agreement in <u>Fendrich</u> was still in effect when the developer furnished a purchase contract for a different lot at a higher price, but, in contrast, Boynton Waterways canceled its reservation agreement with Zlotnick and other prospective purchasers. By allegedly agreeing to reserve one house but then offering a purchase contract for a pricier and less desirable house, the developer in <u>Fendrich</u> contravened the clear terms of a reservation agreement that was still in force and thus engaged in a "classic bait and switch." <u>Id.</u> at 1079 & n.1. In this case, however, Boynton Waterways released the "bait" by canceling the reservation agreement, thus eliminating both the obligations and liabilities of Boynton Waterways and Zlotnick, as specified in the express terms of the agreement. Unlike the situation in <u>Fendrich</u>, a reasonable purchaser would not likely be misled into believing that the price set in the reservation agreement was binding because Boynton Waterways exercised its contractual right to cancel the agreement.

Boynton Waterways canceled the reservation agreement before offering a purchase contract, as it had the full right to do by the express terms of the agreement. Upon cancellation, the agreement plainly states that Zlotnick had "no

<u>Fendrich</u>, that "this Reservation Agreement is not an agreement to sell the Unit, nor does it confer any lien upon or interest in the Unit or on the proposed Condominium property." We conclude that the additional terms contained in Zlotnick's reservation agreement, including the no-claim provision, and Boynton Waterways' cancellation of the reservation agreement draw even sharper distinctions with the scheme deemed illegal in <u>Fendrich</u>.

11

claim of any kind against Seller" because the reservation agreement did not "confer any lien upon or interest in the Unit."[5] Under these circumstances, no reasonable purchaser would believe that a void reservation agreement established a binding purchase price when it was merely an "agreement to agree." Accordingly, we conclude that Zlotnick failed to state a claim under the FDUTPA because the cancellation of the reservation agreement eliminated any possibility that a reasonable purchaser would be misled.

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal of Zlotnick's complaint for failure to state a claim. [6]

**AFFIRMED.**

---

[5]Zlotnick also claims on appeal that Boynton Waterways improperly canceled the agreement because his reservation deposit allegedly was not returned until months after the cancellation. It is unclear if Boynton Waterways bears any fault for this alleged delay because the reservation agreement states that the escrow agent, not Boynton Waterways, is responsible for the return of the deposit. Regardless, this allegation was not included in Zlotnick's complaint, and we thus do not consider this extraneous allegation when we are examining whether the complaint on its face failed to state a claim. See Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368 (11th Cir. 1997) (noting that in considering a motion to dismiss, courts review only "the face of the complaint and attachments thereto").

[6]Because we conclude that Zlotnick failed to state a claim under the FDUTPA against any party, we do not address whether Zlotnick failed to state a claim against Premier in particular and whether Zlotnick properly alleged actual damages.