[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 8, 2012
JOHN LEY
CLERK

No. 11-12282
Non-Argument Calendar

_____

D. C. Docket No. 0:09-cv-60885-PAS

JUDITH SILVER,

Plaintiff - Appellant,

versus

COUNTRYWIDE HOME LOANS, INC.
d.b.a. America's Wholesale Lender, Inc.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 8, 2012)

Before MARCUS, MARTIN, and ANDERSON, Circuit Judges.

PER CURIAM:

Judith Silver challenges the district court's grant of summary judgment to

Countrywide Home Loans, Inc. ("Countrywide"), on all of Silver's claims. Silver also appeals the district court's (1) denial of Silver's motion for sanctions and inference of spoliation of evidence, (2) denial of Silver's motion to amend the complaint and the motion for relief from the denial, (3) grant of Countrywide's motion to strike Silver's demand for a jury trial, and (4) denial of Silver's motion for the district court to recuse itself. We affirm.

I.

We review de novo the grant of summary judgment, taking all justifiable inferences in Silver's favor. Bozeman v. Orum, 422 F.3d 1265, 1267 (11th Cir. 2005). The district court granted summary judgment to Countrywide on the following issues.

a. Fraud

Silver argues that there is a genuine dispute of material fact on her claim for fraud because Countrywide steered her into a riskier mortgage and did not inform her of the mortgage's provisions.

"A party normally is bound by a contract that the party signs unless the party can demonstrate that he or she was prevented from reading it or induced by the other party to refrain from reading it." Consol. Res. Healthcare Fund I, Ltd. v.

Fenelus, 853 So. 2d 500, 504 (Fla. Dist. Ct. App. 2003). It is undisputed that Silver signed all of the agreements that disclosed the terms of her mortgage, even though she was told not to sign any document that she did not understand. Additionally, she could not reasonably be deceived by any oral statements that were at variance with written terms to which she agreed. Hillcrest Pac. Corp. v. Yamamura, 727 So. 2d 1053, 1056 (Fla. Dist. Ct. App. 1999) ("A party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract."). We therefore agree with the district court that Silver's fraud claim fails as a matter of law.[1]

### b. Breach of Contract/Breach of Implied Covenant of Good Faith and Fair Dealing

Silver seems to contend that Countrywide breached the Forbearance Agreement by not upholding its promise to help her refinance her mortgage and by improperly imposing late penalties and reporting her to credit bureaus.

A breach of the covenant of good faith must be based upon the failed performance of an express term of the contract. Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 896 So. 2d 787, 792 (Fla. Dist. Ct. App. 2005) ("There can be no cause of action for a breach of the implied covenant absent an

---

[1] For these same reasons, Silver's conspiracy to defraud claim also fails.

allegation that an express term of the contract has been breached.") (quotations omitted).

In this case, there is no provision in the mortgage agreement—nor any other agreement that Silver has produced—requiring Countrywide to help refinance Silver's mortgage. The Forbearance Agreement states that Countrywide will have "sole and absolute discretion" either to (1) require Silver to recommence regular payments, (2) reinstate the loan in full, or (3) modify the loan or offer other loan assistance. It is undisputed that on March 4, 2009, Countrywide informed her that the modification had been denied. There is no provision requiring that Countrywide seek financial information from Silver before making that decision. Silver has not shown that Countrywide failed to act in good faith with respect to any express term of any contract, and thus this portion of her argument fails as a matter of law. Id.[2]

With respect to Silver's argument that Countrywide breached the Forbearance Agreement by imposing a late penalty and reporting her to credit bureaus, she did not provide this Court—or the district court—with citations to the

---

[2] To the extent that Silver argues that Countrywide breached its duty of good faith with respect to her initial mortgage contract, she has failed to identify any express provision from that contract that Countrywide failed to perform in good faith, and thus we find the argument without merit.

record to support these factual assertions, nor is it clear that her complaint properly raised these issues. See Nat'l Alliance for the Mentally Ill v. Bd. of Cnty. Comm'rs, 376 F.3d 1292, 1295-96 (11th Cir. 2004) (holding that, in accordance with Federal Rule of Appellate Procedure 28(a)(9)(A), failure to include "citations to the . . . parts of the record on which the appellant relies" may result in waiver). Accordingly, we affirm the district court on this issue.

c. FDUTPA

Silver claims that Countrywide's behavior implicates the Florida Deceptive and Unfair Trade Practices Act, which declares that "unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. Fla. Stat. Ann. § 501.204(1).

Deception occurs "if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment. This standard requires a showing of probable, not possible, deception that is likely to cause injury to a reasonable relying consumer." Zlotnick v. Premier Sales Grp., Inc., 480 F.3d 1281, 1284 (11th Cir. 2007) (citation and quotations omitted).

With respect to the initial mortgage agreements, Silver conceded that she

was told not to sign any documents that she did not understand. With respect to the failure to refinance her mortgage, the Forbearance Agreement of December 2, 2008, explicitly said that Countrywide possessed "sole and absolute discretion" to "determine whether additional payment assistance can be offered." Countrywide always had the right to refuse to refinance the loan. We agree with the district court that this conduct does not run afoul of the FDUTPA.

d. Other Claims

In her initial brief, Silver failed to properly raise an argument on her claims of breach of fiduciary duty, negligence, and violation of the Florida RICO statute. These issues are waived. United States v. Jernigan, 341 F.3d 1273, 1284 n.8 (11th Cir. 2003) ("[A] party seeking to raise a claim or issue on appeal must plainly and prominently so indicate. Otherwise, the issue—even if properly preserved at trial—will be considered abandoned.").

II.

The following issues are reviewed for an abuse of discretion. Eli Lilly & Co. v. Air Express Int'l USA, Inc., 615 F.3d 1305, 1313 (11th Cir. 2010) (sanctions and spoliation); Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1312 (11th Cir. 2009) (motion to amend); Murray v. Scott, 253 F.3d 1308, 1310 (11th Cir.

2001) (recusal).

a. <u>Sanctions & Spoliation</u>

Silver contends that the district court abused its discretion by not imposing sanctions and by not finding an inference of spoliation against Countrywide for failing to turn over emails relevant to the case and for failing to have a proper litigation hold placed on Silver's file.

"In the Eleventh Circuit, an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith. While this circuit does not require a showing of malice in order to find bad faith, mere negligence in losing or destroying records is not sufficient to draw an adverse inference." <u>Mann</u>, 588 F.3d at 1310 (citation and quotations omitted).

On September 23, 2010, Countrywide's counsel informed the magistrate that there had been a diligent search for all relevant emails and that none had been found because there was no formal retention policy. However, counsel also stated that she was currently working with Countrywide to ensure that there really was no possible way to recover any old emails. The magistrate ordered Countrywide to file an affidavit explaining what had been done to find the emails, what the

company's retention policy was, and what notice had been sent to Countrywide employees regarding the retention of documents relevant to Silver's case. On October 11, 2010, Countrywide submitted the affidavit of Barbara Travis, who is a litigation specialist at Countrywide Home Loans Servicing, stating that she had requested the office of the president, as well as the vice presidents of several departments, to search for relevant emails, but none had been uncovered. The vice president of the IT department was also in the process of searching for the emails but had informed Travis that Countrywide had a ninety-day email retention policy.

Travis was deposed on December 10, 2010. She testified that Countrywide actually had an email 'deletion policy,' which stated that employees could delete emails whenever they wanted, but all emails older than ninety days would be automatically deleted forever. However, Travis had recently been informed by the IT department that certain "journaled" employees had their old emails automatically archived on a third party's back-up servers. No employee knew whether he or she was a "journaled" employee. Travis testified that, after the magistrate's September 23 order, the IT department began searching these back-up servers for "journaled" employees' old emails. At the time of Travis's deposition, the search was still on-going but had already uncovered several emails relevant to Silver's case.

Travis also testified that in May 2009, a litigation hold was placed on Silver's file. Travis's testimony on this subject consisted mostly of her indicating that she was not involved in deciding whether to put a litigation hold on a file nor whether any actions should be taken in terms of preserving documents that might be relevant to the file.

We find no abuse of discretion in the district court's decision not to impose sanctions and not to find an inference of spoliation. With respect to the emails on back-up servers, Silver makes much of the fact that Travis's affidavit conflicts with her later deposition testimony. However, her initial lack of knowledge about the pseudo-secret archival of "journaled" employees' emails is properly characterized as carelessness at most. See Mann, 588 F.3d at 1310 (holding that "an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith"). Also, Travis's testimony indicated that there were actually more emails than originally believed and that Countrywide was working to continue searching the back-up servers. If Countrywide were acting in bad faith, it seems unlikely that it would reveal that its search of back-up servers had uncovered relevant emails.

As for the litigation hold policy, Silver's argument of bad faith relies exclusively upon Travis's testimony. Silver claims that Travis's testimony shows

that Countrywide had no real litigation hold process. However, Travis testified that a special notation was placed on files that are put on litigation hold. The remainder of Travis's pertinent testimony is to the effect that she was not personally involved in the decision to place a file on litigation hold, nor was she involved in any decisions to preserve relevant documents. This evidence is insufficient to show that the district court abused its discretion by failing to impose sanctions or find an inference of spoliation. Accordingly, we find no error in the district court's decision on these issues. See Eli Lilly, 615 F.3d at 1313.

b. Motion to Amend and Motion for Relief

Silver argues that the district court abused its discretion by denying Silver's motion to amend the complaint and for denying her motion for relief. Silver sought to add new factual details and two new claims against Countrywide. This motion to amend was filed fourteen months after the case was initially removed to the district court. The factual changes that she sought to make to the complaint were mostly minor and certainly not critical to her case, and her new claims against Countrywide would have required the district court to completely abandon its case management plan. Under these facts, we find no abuse of discretion in the district court's decision to deny the motion to amend and the motion for relief.

See Hearn v. McKay, 603 F.3d 897, 899 n.1 (11th Cir. 2010) ("We cannot conclude that the district court abused its discretion in declining to allow Plaintiffs to amend the complaint after the pretrial order's deadline for amendment had passed.").

### c. Motion to Recuse

Silver argues that the district court should have recused itself because the court's spouse is a partner at a law firm that represents another law firm that represents Bank of America, which owns Countrywide. We do not believe that these facts raise a doubt about the district judge's impartiality, and accordingly we find no error. See Christo v. Padgett, 223 F.3d 1324, 1333 (11th Cir. 2000).[3]

AFFIRMED.[4]

---

[3] Because we conclude that the district court properly granted summary judgment to Countrywide on all claims, Silver's argument that the district court erred by striking her demand for a jury trial is rendered moot, and therefore we do not address it.

[4] Silver's request for oral argument is DENIED.