**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-1282

NATHANIEL J. NOLAN, Individually and on behalf of a class of persons similarly situated; WAYNE PAUL WITTENBERG, as Personal Representative of the Estate of Helena Wittenberg,

　　　　　Plaintiffs - Appellants,

　　v.

LABORATORY CORPORATION OF AMERICA HOLDINGS,

　　　　　Defendant - Appellee.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Thomas D. Schroeder, District Judge.  (1:21-cv-00979-TDS-JLW)

Argued:  January 23, 2024　　　　　　　　　　　Decided:  April 10, 2024

Before AGEE, WYNN, and THACKER, Circuit Judges.

Affirmed in part, reversed in part, and remanded by unpublished per curiam opinion.

**ARGUED:**  Robert Craig Finkel, WOLF POPPER LLP, New York, New York, for Appellants. Scott Elliot Bayzle, PARKER POE ADAMS & BERNSTEIN LLP, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  Matthew Insley-Pruitt, Timothy D. Brennan, WOLF POPPER LLP, New York, New York; Jonathan D. Sasser, ELLIS & WINTERS, LLP, Raleigh, North Carolina, for Appellants.  Stephen V. Carey, Charles E. Raynal IV, PARKER POE ADAMS & BERNSTEIN LLP, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Nathaniel Nolan ("Nolan") and the estate of Helena Wittenberg (the "Wittenberg Estate"[1] or "Wittenberg") (collectively, "Appellants") challenge the district court's dismissal of their class action complaint. Appellants sued Laboratory Corporation of America Holdings, including its subsidiaries and affiliates ("Appellee"), on behalf of Nevada and Florida residents who signed a patient financial acknowledgment form which disclosed "estimated charges" for lab services (the "Patient Acknowledgment"). Appellants allege that the Patient Acknowledgment omits material information and contains otherwise false and misleading representations in violation of the consumer protection laws of Nevada and Florida.

The district court dismissed Appellants' complaint for failure to state a plausible claim pursuant to either Nevada or Florida law. Upon review, we reverse the district court's dismissal of Nolan's claim pursuant to Nevada law based on Appellant's theory that Appellee deceived Nolan by failing to disclose or otherwise omitting a material fact from the Patient Acknowledgment. We otherwise affirm.

I.

A.

Appellee provides laboratory testing services to millions of healthcare recipients internationally. In 2018, Nolan visited one of Appellee's Nevada locations, and Wittenberg visited a Florida location to have tests performed that were prescribed by their healthcare

---

[1] The Wittenberg Estate was substituted as a party in this appeal on July 7, 2023.

3

providers.    Prior to undergoing the testing, Appellants presented their insurance information to Appellee.  Appellee provided Appellants with estimates of their financial responsibility via the Patient Acknowledgment form.

At the time Appellee conducts lab testing, it has not yet determined whether a patient's health insurance will cover the requested testing.    But the Patient Acknowledgment estimates assume all services will be covered by the patient's respective insurers.  If the service is covered by insurance, Appellee bills the patient's insurance company the negotiated health plan allowed rate (the "Health Plan Allowed Rate").  If the service is not covered by insurance, Appellee bills the patient directly at the patient list price (the "List Price").

Although the Patient Acknowledgment informs the patient of the estimated Health Plan Allowed Rate, it does not inform the patient of the List Price that will be applicable if the testing is not covered by insurance.  Appellants allege that the List Price for a lab test is substantially higher than the Health Plan Allowed Rate and "grossly exceed[s]" Appellee's cost for providing the test.  J.A. 14.[2]  Accordingly, if a patient's insurer denies coverage for certain lab testing services, Appellants allege that the patient will owe Appellee the much higher List Price.  Appellants allege that Appellee knows this List Price prior to conducting any lab testing and yet fails to provide it to insured patients, even though, if their insurer does not cover the cost of the test, the insured patients could receive a bill that is nearly 15 times higher than the negotiated rate.

---

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

4

The Patient Acknowledgment states in bold and all caps that it is only an estimate of charges, and, in smaller font, that it "assumes all services will be covered" by the patient's insurance. J.A. 53. The Patient Acknowledgement lists each of the tests prescribed, the Health Plan Allowed Rate for each of those tests, the "Estimated Amount Paid by Health Plan," and the patient's "OUT-OF-POCKET EXPENSES" after taking into consideration the deductible, coinsurance, and copay amounts in the patient's plan. *Id.* (emphasis in original). Specifically, the first page of the Patient Acknowledgment provides a summary of estimated charges for the tests performed:

## PATIENT ACKNOWLEDGMENT OF ESTIMATED FINANCIAL RESPONSIBILITY

### PATIENT INFORMATION

Name: Nathaniel Nolan
DOB: ▮▮1994
Gender: Male

Responsible Party: Nathaniel Nolan
Address: 2615 FURY CT
RENO, NV, 89521

### INSURANCE COVERAGE INFORMATION

Primary: Anthem BCBS Nevada
LabCorp Payer Code: NVANT
Subscriber #: N▮▮▮5001

### PHYSICIAN INFORMATION

Account: 27301770
Practice Name: MEMOR BEHAVIORAL HEALTH
Physician Name: YVETTE KAUNISMAKI

Your Health Plan Benefit Status: *Eligible on 09/11/2018*

| Deductible Remaining | Coinsurance | Copay | Out-of-Pocket Remaining |
|---|---|---|---|
| Yes | 10% | - | Yes |

### SERVICE INFORMATION

Date of Service: 09/11/2018
Tests Ordered: 322000, 005009, 001974, 004259, 081950, 998085

## SUMMARY OF ESTIMATED CHARGES
*This estimate assumes all services will be covered.*

| Billing Code | Description | Health Plan Allowed Rate | Estimated Amount Paid by Health Plan | Deductible | Coinsurance | Copay |
|---|---|---|---|---|---|---|
| 80050 | GENERAL HEALTH PANEL | $17.82 | - | $17.82 | - | |
| 84439 | T4;FREE | $5.89 | - | $5.89 | - | |
| 36415 | VENIPUNCTURE | $1.27 | - | $1.27 | - | |
| 82306 | VIT D,25-HYDROXY | $18.93 | - | $18.93 | - | |
| | Totals: | $43.91 | - | $43.91 | - | |

YOUR OUT-OF-POCKET EXPENSES

A  $43.91
DEDUCTIBLE, COINSURANCE, AND COPAY

The second page of the Patient Acknowledgment contains additional language regarding the patient's payment responsibility and requires the patient's signature:

5

**254-847-1677-0**

**NOLAN, NATHANIEL**

**ATCHMNT**

PATIENT ACKNOWLEDGMENT OF ESTIMATED FINANCIAL RESPONSIBILITY

PATIENT INFORMATION

ne: Nathaniel Nolan
B: ▮▮▮1994
.nder: Male

Responsible Party: Nathaniel Nolan
Address: 2615 FURY CT
RENO, NV, 89521

### ACKNOWLEDGMENT OF ESTIMATED FINANCIAL RESPONSIBILITY

You are being provided with this Acknowledgment of Estimated Financial Responsibility. This estimate assumes all services will be covered. Your physician has requested the above service(s) and some services may be considered investigational, require prior authorization, are excluded or otherwise not covered by your health plan. Additionally, your physician may have requested laboratory services that will automatically trigger additional testing procedures based on certain clinical indications or your physician may determine it necessary to order additional testing procedures based on the sample collected today. LabCorp will bill you for any additional testing. Your health plan may not pay for these services and you will be personally responsible for payment for these services. This acknowledgment is based on the health plan information provided at the time of service. In the event that your information changes, your acknowledgment of financial responsibility still applies.

By signing below, you acknowledge: I want the laboratory test(s) listed above to be performed. My health plan will be billed for the applicable charges. As outlined above, I understand that my health plan may not pay for this test(s) at 100%. The amount I may have to pay may be different than the estimated amount. I agree to be personally and fully responsible for charges from today's services that are not covered by my health plan.

**YOUR ESTIMATED RESPONSIBILITY**
*Credit Card Authorization Requested Today*

| TOTAL |
|:-----:|
| **$43.91** |

DEDUCTIBLE, COINSURANCE, AND COPAY

Signature _~/ut ~/ol~_      Date _9/11/18_

### CREDIT CARD AUTHORIZATION

By signing this form, I authorize LabCorp to charge my credit card for an amount not to exceed **$43.91**____. I understand that my health plan will be billed prior to charging my credit card. My credit card will not be charged until my health plan responds to the claim. Should there be any remaining balance due after my card is charged, LabCorp will send an invoice and I will be responsible for paying the remaining charges. In the event that there are any problems with my credit card payment, I agree to pay all collection costs and reasonable attorney's fees incurred in order to collect my balance.

Signature _~/ut ~/ol~_      Date _9/11/18_

Printed Name _Nate Nolan_

*If you have any questions regarding your estimated responsibility, please call 1-888-470-3741 or go to www.labcorp.com/PAC.*

Although in fine print, in the first paragraph of the second page, the Patient Acknowledgment states, in part, "Your health plan may not pay for these services[,] and you will be personally responsible for payment of these services." J.A. 54. And again, the Patient Acknowledgment states, "This estimate assumes all services will be covered." *Id.* By signing the Patient Acknowledgment, the patient confirms:

> As outlined above, I understand that my health plan may not pay for this test(s) at 100%. The amount I may have to pay may be different than the

6

estimated amount. I agree to be personally and fully responsible for charges from today's services that are not covered by my health plan.

*Id.* This information is provided in very small font next to the estimated financial responsibility which is in much larger text.

At the bottom of the page, the Patient Acknowledgment provides Appellee's contact information should patients have additional questions regarding their "estimated responsibility." *Id.*

Nowhere does the Patient Acknowledgment indicate the List Price that patients will be charged should the patient's insurer deny coverage. Nor were Appellants provided this information prior to consenting to financial responsibility. In fact, the opposite is true. Per the complaint, before taking Nolan's blood, a representative of Appellee assured Nolan that his estimated responsibility would be equal to or less than the Patient Acknowledgment, stating, "Don't worry about it, your estimated responsibility is less than $50." J.A. 29.

Appellants' health plans ultimately denied coverage for some or all of the lab services provided by Appellee. Specifically, Nolan's insurer denied coverage for his Vitamin D test. Instead of receiving an invoice for "less than $50" as he had been assured, Appellee sent Nolan an invoice for $316.98, which included a $292 charge for the Vitamin D test. The final invoice amount for his Vitamin D test was nearly 16 times higher than the $18.93 listed on his Patient Acknowledgment. Shocked to have received this substantially higher invoice, Nolan wrote to Appellee's CEO and stated, "There is no information on my original paperwork that I would owe nearly $300 for one test; if there

7

had been, I absolutely would not have consented to the test." J.A. 33. Nolan wrote further that had he known he "would be charged $292 for a test I could pay $50 for elsewhere," he would have likely "gone to a different lab." *Id.*

Wittenberg's insurer also denied coverage for her testing. In 2018, Wittenberg visited Appellee on two different occasions before learning that Appellee was outside of her insurance network. Originally, Wittenberg received the Health Plan Allowed Rate of $44.60 for her first visit and $65.27 for her second. But after her insurer denied coverage for the tests, Wittenberg received two List Price invoices for $335 and $650 respectively.

B.

On December 29, 2021, Appellants filed their complaint, asserting that Appellee has violated the Nevada Deceptive Trade Practices Act, N.R.S. § 598.0903 *et seq.* (the "NDTPA") and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201 *et seq.* (the "FDUTPA"). Appellants styled their complaint as a class action "on behalf of Nevada and Florida residents who signed a Patient Acknowledgement disclosing the 'Estimated Charges' for lab services but were billed a [List Price] . . . for those services that exceeded the disclosed 'Health Plan Allowed Rate' for those services." J.A. 8.

Appellants allege that Appellee violated the NDPTA by omitting a material fact, the List Price, as well as by including false and misleading representations in the Patient Acknowledgment. As to the FDUTPA, Appellants allege that Appellee deceived patients by stating only that their total "may be different" from the estimated amount if the services are not covered by insurance, when, according to Appellants, Appellee knew for a fact the

8

List Price it charges patients is "many multiples (frequently more than ten times) the estimated amount on the Patient Acknowledgment form." J.A. 49.

Appellee moved to dismiss Appellants' claims before the district court for failure to state a claim, arguing that neither Appellant could point to a false, misleading, or deceptive statement or omission in the Patient Acknowledgment. The district court granted Appellee's motion to dismiss.

In analyzing Appellants' claims, the district court concluded that the Patient Acknowledgment did not contain any false or misleading statements or fail to disclose a material fact in violation of either Nevada or Florida law. Regarding the Nevada law claim, the district court determined that Appellee did not fail to disclose any material fact -- specifically the List Price -- because this information would not be material to patients, like Nolan, who represent to Appellee that they plan to use health insurance. The district court further determined that, based on the totality of the information provided in the Patient Acknowledgement, the estimate makes clear that it assumes all services are covered by the patient's insurer and does not guarantee that charges for out of network services will be the same as the Health Plan Allowed Rates.

Regarding the FDUTPA claim, the district court concluded that the Wittenberg Estate also failed to establish how the Patient Acknowledgment, taken as a whole, was likely to deceive a reasonable consumer. Again, the district court pointed to the disclaimer language warning the patient that the estimate assumes all services are covered. The district court also did not find any unfair practice in the Patient Acknowledgment that violated Florida public policy.

9

The district court dismissed the complaint with prejudice.[3]  This timely appeal followed.

## II.

"We review de novo a district court's dismissal of a complaint pursuant to Rule 12(b)(6)." *Holloway v. Maryland*, 32 F.4th 293, 298 (4th Cir. 2022).  "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "In evaluating a complaint's sufficiency, we construe the allegations and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Kashdan v. George Mason Univ.*, 70 F.4th 694, 700 (2023).  We may also consider documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  While a motion to dismiss tests the sufficiency of a complaint, "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (internal quotation marks omitted).

---

[3] The district court noted that Appellants' theories pursuant to N.R.S. § 598.0923(1)(d) and (e) (knowingly using "coercion, duress, or intimidation" or "an unconscionable practice in a transaction") were raised for the first time in their brief in response to Appellee's motion to dismiss.  The district court held that to the extent Nolan believed he had claims pursuant to those sections, they were dismissed without prejudice. These claims are not at issue on this appeal.

III.

A.

The Nevada Deceptive Trade Practices Act

Appellants first challenge the district court's decision to dismiss Nolan's NDTPA claim. The NDTPA provides that a seller who knowingly "[f]ails to disclose a material fact in connection with the sale" of services engages in a deceptive trade practice. N.R.S. § 598.0923(1)(b). The NDTPA also prohibits any "false or misleading statements of fact concerning the price of goods or services" as well as "any other false representation" knowingly made "in a transaction." *Id.* § 598.0915(13), (15).

Appellants argue that the Patient Acknowledgment violates the NDTPA by (1) failing to disclose the List Price as a fact material to the transaction, and (2) including false and misleading information about the prices of the requested lab tests. We address each theory in turn.

1.

First, Appellants contend that the district court erred in finding that they did not allege a plausible NDTPA claim against Appellee for failing "to disclose a material fact" -- the List Price -- in its Patient Acknowledgment. *See* N.R.S. § 598.0923(1)(b). Specifically, Appellants argue that the List Price, which they allege is materially higher than the Health Plan Allowed Rate, is known by Appellee when it presents the Patient Acknowledgment for signature and yet Appellee fails to disclose it to patients who represent they have insurance.

11

Nevada courts employ both an objective and subjective test for determining whether something amounts to a material fact. Thus, a fact is material if (1) a reasonable person would attach importance to it in making a decision in the transaction at issue or (2) the seller knows or has reason to know that the purchaser is likely to regard the matter as important, even if a reasonable person would not. *Poole v. Nev. Auto Dealership Inv., LLC*, 449 P.3d 479, 488 (Nev. App. 2019). Here, Appellants rely on the objective test.

We agree with Appellants that by failing to disclose information that would be material to the reasonable patient, Appellee violated the NDTPA.

a.

The district court determined that the List Price was not material. The district court reasoned that there was no material omission because the List Price is only one of several other prices that "could apply depending on . . . how much the insurance company later deems covered." J.A. 213. Based on this, the district court hypothesized that requiring Appellee to "disclose the possible list price would, by implication, subject the provider to liability for not disclosing all other possible prices." *Id.* On appeal, Appellants argue that the district court improperly drew inferences in Appellee's favor as well as incorporated facts not alleged in the complaint to make its decision. We agree.

Whether other prices beyond the estimates provided by Appellee could change a patient's financial estimate is not the material fact Appellants argue was omitted from the Patient Acknowledgment. Rather, the complaint alleges that Appellee knew the List Price at the time it provided the Patient Acknowledgment but failed to disclose it -- which was material.

Appellants further support their allegation that Appellee knows the List Price prior to conducting any testing by pointing to Appellee's practice of disclosing the List Price to Medicare patients "when Medicare coverage is expected to be denied." J.A. 14. Appellants allege that not only does Appellee know the List Price, but Appellee also knows that a patient will be required to pay the List Price if their insurer denies coverage for any tests. The district court failed to accept these allegations as true and construe them in the light most favorable to Appellants. *See Morgan v. Caliber Home Loans, Inc.*, 26 F.4th 643, 648 (4th Cir. 2022) ("[W]e accept as true the well-pled allegations of the complaint and construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." (internal quotation marks omitted)). Accepting Appellants' plausible allegations as true, we hold the List Price was material to a reasonable patient.

b.

The district court further supported its determination that the List Price was not material by pointing out that when he received the Patient Acknowledgment, Nolan had provided his insurance information to Appellee and represented that he planned to use it to pay for the tests. Here, the district court reasoned that the Patient Acknowledgment was consistent with that representation. Appellants contend the district court erred in this regard because the List Price was objectively material, even to the insured patient.[4]

---

[4] As a threshold matter, the district court also considered whether the NDTPA requires a claimant to establish that an independent duty to disclose the material fact exists in order to establish a plausible NDPTA violation. Requiring Appellants to cite an independent duty would essentially render the NDTPA redundant of common law fraud causes of action, which require successful claimants to make such a showing. *Saticoy Bay,* (Continued)

13

We agree that the List Price would be material to the reasonable insured patient of Appellee. While the Patient Acknowledgment assumes that insurance will cover the testing, an insurer can deny coverage for a multitude of reasons. And if a test is not covered by insurance, Appellants allege that Appellee will charge the patient the List Price. Therefore, the List Price is important to patients in weighing what their financial outlay will be should their insurance deny coverage, and in deciding whether to continue with the lab testing with Appellee or find a different provider.

Indeed, a patient who signs the Patient Acknowledgment becomes "personally and fully responsible" for the List Price when they agree to be liable "for charges from today's services that are not *covered by* my health plan" J.A. 54 (emphasis supplied). Nonetheless, Appellee does not disclose the critical information -- the List Price -- to its patients prior to testing. Viewing the allegations in a light most favorable to Appellants, as we must at this stage, the List Price is a material fact to the transaction. Thus, Appellants sufficiently allege a plausible claim for omission of a material fact in violation of the NDTPA.[5] We,

---

*LLC Series 34 Innisbrook v. Thornburg Mortg. Sec. Trust*, 510 P.3d 139, 143 (Nev. 2022) (discussing common law fraud claims based on duty to disclose information at issue); *see also Betsinger v. D.R. Horton, Inc.*, 232 P.3d 433, 436 (Nev. 2010) ("Statutory offenses that sound in fraud are separate and distinct from common law fraud."). The NDTPA is intended to provide additional protections to consumers beyond the common law. Therefore, Nevada law is clear that a claimant need not point to an independent duty to disclose in order to prove a violation of the NDTPA.

[5] Appellee argues that even if Nolan could state a plausible claim pursuant to the NDTPA, Nolan fails to allege any damages such that we can otherwise affirm the district court's dismissal of his NDTPA claim. Nothing requires this court to consider Appellee's arguments in the first instance, and we decline to do so here. *Goldfarb v. Mayor & City Council*, 791 F.3d 500, 515 (4th Cir. 2015) (citing *Singleton v. Wulff*, 428 U.S. 106, 120 (Continued)

14

therefore, reverse the district court's dismissal of Nolan's NDTPA claim on the omission of a material fact theory and remand for further proceedings.

2.

Appellants also contend that Appellee made false and misleading statements in violation of the NDTPA.  In dismissing Nolan's NDTPA claim, the district court held that the Patient Acknowledgment did not contain false or misleading information because it provided just what it says it provides -- estimates based on the assumption that the services are covered by the patient's insurance.  The district court noted that the "totality of the information available on the [Patient Acknowledgment] dispels any basis" for confusion or deception.  J.A. 203.  We agree with the district court's rejection of Appellants' theory that the Patient Acknowledgment contained false or misleading statements.

a.

Appellants argue that Appellee made a misleading statement on the Patient Acknowledgment because the form says patient responsibility may be different, when, as Appellants allege, the final invoice will be substantially higher if a patient is required to pay the List Price.  Here, Appellants contend that the language stating that the patient "understand[s] that [their] health plan may not pay for this test[] at 100%" implies that a patient's responsibility will only be less than the estimate provided.  J.A. 54.  And by

_____

(1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.")).  Indeed, the "district court is in a better position to consider the parties' arguments in the first instance, which can be presented at length rather than being discussed in appellate briefs centered on the issues the district court did decide." *Id.*

15

calling the Patient Acknowledgment an "estimate," Appellants allege that Appellee deceives patients into thinking that their financial responsibility will be approximately the estimate, even if insurance does not cover the test.

"Differential pricing alone is not a fraudulent practice . . . ." *Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1314 (11th Cir. 2000) (considering whether Rite Aid drug pricing amounts to fraudulent scheme). Courts applying the NDTPA have held that where the language of a contract warns that prices and circumstances are subject to change, no reasonable consumer would assume the stated price will always apply. *Sylver v. Exec. Jet Mgmt.*, No. 2:10cv1028, 2011 WL 9329, at *3 (D. Nev. Jan. 3, 2011) (holding consumer's assumption that the type of aircraft stated in the contract would remain the same was unreasonable when contract listed it as subject to change). It is not false to state that the prices may be different depending on changes in the Health Plan Allowed Rate or if the insurance company only provides partial payment.

Nolan was on notice that these estimates did not apply if insurance did not cover the services. The Patient Acknowledgment states numerous times, "This estimate assumes all services will be covered." J.A. 53–54. Indeed, above the patient signature line, where Nolan admits he signed, it reads: "I agree to be personally and fully responsible for charges from today's services that are *not covered* by my health plan." J.A. 54 (emphasis supplied). With these warnings in mind, it was unreasonable for Nolan to assume that the estimate would be the approximate amount owed to Appellee if his tests were not covered by insurance.

16

b.

Appellants also aver that the language committing Nolan to being "personally and fully responsible for the[] services" is hidden or difficult to read. *See* Appellants' Opening Br. at 4. Appellants' arguments are unavailing.

The obligation that the patient is responsible for all charges "that are not covered by [their] health plan" appears several times on the Patient Acknowledgement and is within the same paragraphs (and therefore the same font and location) as the language Appellants contend misled Nolan -- that the amount owed "may be different" than the estimates. J.A. 54.

Because the terms obligating Nolan to pay for the services, even if they are not covered by insurance, appear multiple times in the Patient Acknowledgment and are easy to read, the facts here differ from those in which courts found disclaimer language insufficient to dispel confusion. *See Kelley v. Fairway Chevrolet Co.*, 2015 Nev. Dist. LEXIS 1538, at *11 (8th Jud. Dist. Ct. Oct. 10, 2015) (concluding that disclaimer did not dispel confusion in a television commercial where the disclaimer was hard to read because it was displayed for only two seconds in a small font at the bottom of the screen).

In sum, no reasonable consumer would assume that the Health Plan Allowed Rate would be the only charge they would receive absent insurance coverage. Therefore, we affirm the district court's dismissal of Nolan's NDTPA claim based on the theory that the Patient Acknowledgment contains any false or misleading statement.

17

B.

The Florida Deceptive and Unfair Trade Practices Act

We next turn to Appellants' challenges to the district court's dismissal of the Wittenberg Estate's FDUTPA claim. The FDUTPA makes illegal "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

Pursuant to the FDUTPA, "[a] deceptive act or unfair practice may be found when there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Noveshen v. Bridgewater Assocs., LP*, 47 F. Supp. 3d 1367, 1377 (S.D. Fla. 2014) (internal quotation marks omitted); *Millennium Commc'ns & Fulfillment, Inc. v. Office of the Attorney Gen.*, 761 So. 2d 1256, 1263 (Fla. 3d Dist. Ct. App. 2000). An act is unfair pursuant to the FDUTPA if it offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *Alhassid v. Nationstar Mortg. LLC*, 771 F. App'x 965, 969 (11th Cir. 2019) (citing *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)).

In reviewing the Wittenberg Estate's FDUTPA claim, the district court held that the Patient Acknowledgment contained no misrepresentation because "[t]here are no assurances that health insurance will cover the tests, and there are no assurances the estimate will be the ultimate amount for which the patient is financially responsible." J.A.

18

220.   We again see no allegations of false or misleading statements in the Patient Acknowledgment sufficient to withstand a motion to dismiss.[6]

### 1.

To state a plausible violation of the FDUTPA, a claimant must demonstrate that the statements or circumstances at issue would give rise to "probable, not possible, deception" that is "likely to cause injury to a reasonable relying consumer." *Millennium Commc'ns & Fulfillment*, 761 So. 2d at 1263 (internal quotation marks omitted).

"An objective test is used to determine whether an act is deceptive under FDUTPA, and the plaintiff must show that the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1098 (11th Cir. 2021) (internal quotation marks omitted).  We construe the FDUTPA's provisions liberally to "protect the consuming public and legitimate business enterprises

---

[6] On appeal, Appellants aver that the Patient Acknowledgment is also deceptive and unfair pursuant to the FDUTPA because it fails to disclose the List Price which is material to patients when agreeing to lab testing with Appellee.  But the allegations in Appellants' complaint do not make out this allegation.  Indeed, the district court pointed out that Appellants improperly lodged several new theories, including their "deception-by-omission theory" in their response to the motion to dismiss. J.A. 204 ("Labcorp is correct that the complaint does not specifically allege a violation of § 598.0923(1)(b) [for omission of a material fact].").  And although the district court nevertheless addressed Appellants' theory of omission pursuant to the NDTPA because it determined Appellee had notice of this theory, the district court did not explicitly make a similar finding allowing Appellants to proceed on an omission theory pursuant to the FDUTPA.  Because the "district court is in a better position to consider the parties' arguments in the first instance," we decline to weigh in on this issue at this juncture. *See Goldfarb*, 791 F.3d at 515.

from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

Appellants argue that the Patient Acknowledgment as a whole deceives consumers into believing their financial responsibility will be approximately the estimate. This argument fails for the same reasons we rejected the NDTPA claim for inclusion of a false or misleading representation. The Patient Acknowledgment does not attempt to provide anything more than an estimate of costs assuming all the services are covered by insurance. Unlike in other cases where courts have found violations of the FDUTPA, here, Wittenberg was never promised that she would pay no more than the estimate. *See Fendrich v. RBF, LLC*, 842 So. 2d 1076, 1080 (Fla. 4th Dist. Ct. App. 2003) (finding seller mislead consumer with an option contract for a specific unit at a fixed price that in fact granted consumer no right to that particular lot, despite the consumer writing the seller a reservation check for $25,000); *State Farm Mut. Auto. Ins. Co. v. At Home Auto Glass LLC*, No. 8:21cv239, 2021 WL 6118102, at *5 (M.D. Fla. Dec. 27, 2021) (identifying a plausible deceptive practice after defendant created a scheme to falsify repair labor invoices in order to inflate insurance charges).

As previously noted, the Patient Acknowledgment states in several places, "This estimate assumes all services will be covered." J.A. 54. A reasonable consumer would not read these disclaimers and ignore their warning. *Compare Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1285 (11th Cir. 2007) (dismissing FDUTPA claim where the form at issue explicitly warned the consumer that it was not a binding purchase agreement), *with Fendrich*, 842 So. 2d at 1080 ("When the reservation form, however, unequivocally

20

represents that the consumer will be given the opportunity to purchase a particular lot or unit at a firm price, it can be likely to mislead.").

Nor do Appellants allege that the estimated costs themselves were incorrect or falsified -- only that those estimates did not apply because the services were not covered. Without more, the Wittenberg Estate's claim does not rise to the level of deception present in other cases, such as *Fendrich or State Farm*. Therefore, we conclude that the Wittenberg Estate failed to allege facts to support that the Patient Acknowledgment is misleading pursuant to the FDUTPA.

2.

Appellants contend that the Patient Acknowledgment is deceptive and unfair in violation of the FDUTPA because its plain language, including that the patient's final financial responsibility "may be different," is misleading where Appellants allege the amount due will be substantially higher if the List Price applies. Here, we again agree with the district court that the Patient Acknowledgment was not misleading and did not violate any long standing public policy or amount to an immoral or oppressive practice.

Dual pricing practices alone are not misleading where the consumer was warned that the price was subject to change or depended on specific circumstances. For instance, in *Kurimski v. Shell Oil Company*, a district court held that defendant's cash versus credit gas pricing structure was not unfair or deceptive. No. 21cv80727, 2022 WL 2913742, at *1 (S.D. Fla. June 30, 2022). Kurimski alleged that Shell Oil Company had an unfair and deceptive "split pricing" practice where it advertised one price for purchases made with a credit card and a slightly lower price for purchases made with cash. *Id.* Kurimski argued

21

that by advertising the lower cash price, defendant was misleading consumers into thinking they would receive the lower price for gas when using a debit card as a "cash" purchase. *Id.* at *5. The *Kurimski* court reasoned that in light of all the information provided to the consumer at the fuel pump, including both pricing options and clear labels, the split pricing system was not unfair. *Id.* at *6. The court noted that a reasonable consumer would not simply assume that they would receive the cash price for a debit transaction without "requir[ing] more information." *Id.* at *7.

The same is true here, considering the Patient Acknowledgment's warnings that the services may "not [be] covered by your health plan." J.A. 57. When considering alleged violations of the FDUTPA, we "take into account all [of] the information available to consumers and the context in which that information is provided and used." *Piescik v. CVS Pharmacy, Inc.*, 576 F. Supp. 3d 1125, 1132 (S.D. Fla. 2021). Wittenberg should not have assumed that, without insurance coverage, her estimated financial responsibility would be the same. Such "wishful thinking" does not give rise to a plausible FDUTPA claim. *Millennium Commc'ns & Fulfillment*, 761 So. 2d at 1265 (finding no FDUTPA violation where consumers assumed that credit card offered would be Visa or MasterCard when neither was guaranteed in the language of the offer).

These allegations fall far short of those courts have accepted as "unfair" practices. *See Zlotnick*, 480 F.3d at 1285 (finding no unfair scheme in allegations that defendant was intentionally canceling reservation agreements to charge higher prices for the same lots because the agreement clearly reserved defendant's right to do so).

Therefore, we affirm the district court's dismissal of the Wittenberg Estate's FDUTPA claim on the theory that it contains any misleading statements or unfair practice.

IV.

For the foregoing reasons, we hold that Nolan plausibly stated a violation of the NDTPA based on Appellee's failure to provide the List Price on the Patient Acknowledgment and reverse the dismissal of that claim. We affirm the district court in all other respects and remand for further proceedings consistent with this opinion.

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED*